# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JEREMIAH MONTGOMERY JONES, #254548 | * |
| | * |
| Plaintiff | * |
| v | * Civil Action No. RWT-10-2928 |
| | * |
| WARDEN MORGAN, THE REDUCTION IN VIOLENCE[1] COMMITTEE, and FREDERICK JOSEPH NASTRI. | * |
| | * |
| Defendants | * |

\*\*\*

## MEMORANDUM OPINION

Before the Court is a Motion to Dismiss or, in the Alternative, for Summary Judgment filed by Defendants Warden J. Philip Morgan and Frederick Joseph Nastri. ECF No. 20. Plaintiff has responded. ECF No. 22. After reviewing the pleadings, exhibits, and applicable law, the Court determines that a hearing is not necessary. Local Rule 105. 6 (D. Md. 2010). For the reasons that follow, Defendants' motion, construed as a Motion for Summary Judgment, will be granted and judgment will be entered in favor of Defendants.

## I. Background

### A. Plaintiff's Claims

In this complaint filed pursuant to 42 U.S.C. § 1983, Plaintiff Jeremiah Montgomery Jones ("Jones"), a self-represented inmate who is incarcerated at Western Correctional Institution

---

[1] Service has not been obtained on the "Reduction in Violence Committee." Pursuant to prison directive, all DOC prisons are directed to implement policies and procedures to reduce incidents of inmate violence. Each DOC facility has an RIV for the purpose of reviewing and identifying strategies to reduce levels of violence. See e.g. Lomax v. Shearin, 2011 WL 1792067 (D. Md 2011). For reasons apparent herein, even had service been obtained, Jones presents no facts supporting his claim that members of the Reduction in Violence Committee have violated his constitutional rights.

("WCI"), claims that Defendants have violated his due process and Eighth Amendment rights. Jones complains that his institutional sentence of 200 days disciplinary segregation and consecutive 30 days' cell restriction violates his right to due process. He also contends that the length of his disciplinary segregation sentence is too long and should have taken into account his record of "fair" or otherwise "good" conduct. Complaint, p. 4 and Attachment. Jones also asserts that he was improperly placed on cell restriction without a hearing. See id.

Additionally, Jones claims that a WCI policy prohibiting inmates on disciplinary segregation from having coats, sweatshirts, and knitted items such as hats and religious headgear is unfairly restrictive and inconsistent with Division of Correction (DOC) guidelines. He further contends that WCI policy requiring inmates on disciplinary segregation to pay costs for mailing their personal property for safekeeping outside the institution when storage space is unavailable at WCI is unfair and inconsistent with DOC guidelines. As redress, Jones seeks $300,000.00 in damages and injunctive relief to permit him to bring additional personal items into disciplinary segregation and to wear knitted religious headgear. Complaint, Attachment.

### B. Facts

On July 4, 2010, Jones was charged at WCI with assaulting another inmate and insubordination. Def. Ex. A, ¶ 3. On July 12, 2010, Jones pled guilty to the assault at an institutional hearing over which Defendant Nastri, a hearing officer, presided. Id. ¶ 4 and pp. 9-13. The charge of assault included the insubordination offense because Jones failed to stop assaulting the victim after being repeatedly ordered to do so by corrections officers. Def. Ex. A, p. 4.

### C. Sentence for Infractions

Sentences for an inmate's infractions are imposed by using a sentencing matrix based on the type of offense and the inmate's adjustment history, including prior infractions while incarcerated. Def. Ex A, pp. 24- 31, DCD #105-8 "Adjustment History Sentencing Matrix and Sanctions." For example, an inmate who had only one infraction in the previous recording period might be placed in the "fair" category. Id., pp. 25-26. Inmates with a "poor" adjustment history are subject to longer terms of discipline. Id. Inmates who are found guilty of an infraction are usually sentenced to disciplinary segregation. Id., p. 32. Cell restriction, loss of visitation, or other sanctions may be imposed to be served concurrent with or as an alternative to disciplinary segregation. Id., p. 33.

When sentencing an inmate for an infraction, hearing officers may consider mitigating or aggravating factors in determining the length of sentence. Id., pp. 28-30. In cases of serious offenses such as murder, attempted murder, assault with the intent to cause serious bodily harm, assault that results in serious bodily harm, disruptive activities, or action creating a sensitive security situation, the hearing officer can override an inmate's adjustment history and consider his adjustment history to be "poor," subjecting him to more severe sanctions. Id., p. 28.

In this case, Hearing Officer Nastri overrode Jones's adjustment history and re-classified his adjustment history from "fair" to "poor" because Jones used a weapon during the assault to stab the victim, and the assault occurred during a mass movement. Id., ¶5 and p. 12. Nastri sentenced Plaintiff to 200 days of disciplinary segregation based on the guidelines in the sentencing matrix for inmates with a poor adjustment history. Id. The Warden later adopted the Reduction in Violence Committee's recommendation to add a 30 days' cell restriction. Def. Ex.

A, p. 2, ¶ 6.

**C. Property Restrictions on Disciplinary Segregation**

Personal property is restricted on disciplinary segregation for penological reasons such as security. Def. Exhibit B, ¶4. For example, knit headgear is prohibited because it can be unraveled to create "fishing lines," which are used to pass contraband between inmates in different cells. Id. Religious headgear is permitted so long as it is made of non-knitted material. Id., p. 53.

DOC guidelines allow an inmate to place property prohibited in disciplinary segregation in storage facilities at the institution. Id., p. 50. The institution must inform the inmate if it is unable or unwilling to store the property, and give him thirty days to mail the property to an outside location at his own expense; otherwise the property is destroyed or disposed of. Id.

**II. Standard of Review**

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has explained that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

showing that there is a genuine issue for trial.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F. 3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [his] favor without weighing the evidence or assessing the witnesses' credibility," Dennis v. Columbia Colleton Medical Center., Inc., 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (quoting Drewitt v. Pratt, 999 F. 2d 774, 778–79 (4th Cir. 1993), and citing Celotex Corp. v. Catrett, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

### III. Discussion

#### A. Due Process Claims

Inmates have a liberty interest in actions that result in the loss of good time credits or lengthen their term of incarceration. See generally Sandin v. Conner, 515 U.S. 472, 477-79 (1995). In the ordinary course of prison administration and prisoner discipline, however, due process rights are limited to instances where state law or regulation creates an enforceable expectation or where the adverse action "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. The length of time an inmate is placed in disciplinary segregation does not impose on a prisoner atypical or significant hardship triggering due process. See Beverati v. Smith, 120 F.3d 500, 503-04 (4th Cir. 1997) (observing "although the conditions were more burdensome than those imposed on the general prison population, they were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life."). "[A]dministrative segregation is

5

the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration" and does not, by itself, implicate the Due Process Clause. See Hewitt v. Helms, 459 U.S. 460, 467-68 (1983). There is nothing in the record or pleadings in this case which show that Jones's assignment to disciplinary segregation and cell restriction subjected him to atypical hardship as contemplated by Sandin or Beverati. Consequently, no liberty interest is implicated.

Jones appears to claim that he was deprived of a liberty interest because the sentencing matrix was not properly applied. Complaint, p. 5. He argues that his rating of "fair" entitled him to a lower sentence on disciplinary segregation and was improperly overridden by the hearing officer. Jones fails to recognize, however, that DOC policy clearly allows a hearing officer to increase a term of disciplinary segregation if the infraction is, as here, sufficiently serious. Def. Ex. A, p. 28.

The addition of 30-days' cell restriction to Jones's punishment similarly fails to implicate a liberty interest. In any event, Jones was provided a hearing and pled guilty to the infraction before he was given the cell restriction. DOC policy does not require a separate hearing to sanction an inmate with additional days of cell restriction and vests the warden with authority to independently increase or add additional punishment after reviewing the inmate's conduct. Id. p. 26. To the extent Jones might be alleging that Defendants violated their own policies, procedures, rules, or regulations (a violation of state law or regulation), he fails to state a claim of constitutional violation under 42 U.S.C. § 1983. See Riccio v. City of Fairfax, Va., 907 F. 2d 1459 (4th Cir. 1990) (violation of a procedure not required by the Constitution does not state a due process claim).

### B. Property Restrictions

As earlier noted, inmates on disciplinary segregation are allowed religious headwear so long as the item is not knitted. Supra, p. 4. Jones acknowledges that other inmates in disciplinary segregation wear non-knitted religious items, and provides no explanation for why he cannot do so in accordance with his religious practice. Complaint, Attachment, ¶ 3. Inmates are also allowed thermal underwear, negating Jones's claim that inmates on disciplinary segregation are denied warm clothing. Def. Ex. A, p. 53. Defendants are entitled to summary judgment as a matter of law.

Jones's claim that he is unfairly prohibited from possessing items allowed by other inmates on disciplinary segregation presents no genuine dispute of material fact. Decisions to deny privileges to certain inmates are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage the prisons safely and efficiently. See Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991) ("Any review, therefore, of prison discretion begins with a recognition that the liberty interest of a convicted defendant is substantially restricted and his confinement is properly subject to the management of prison officials, who for the order of the prison, the safety of prisoners, and the safety of themselves must have broad discretion in the management of the prison.") Knitted garments present security concerns and the restriction at issue is reasonably related to legitimate penological interests.

Jones's contention that WCI policy for storing and shipping items prohibited on disciplinary segregation is "atypical" is controverted by fact: DOC policy specifically states that inmates are responsible for the costs of sending property outside the institution. Supra, p. 4.

The policy applies generally to all DOC correctional institutions. Jones's claim is both groundless and fails to state a federally cognizable claim for relief under § 1983.

Lastly, Jones's Motions for Injunctive Relief (ECF No. 23 and 24) will be dismissed without prejudice. If Jones wants to challenge his reassignment to administrative segregation or raise claims of retaliation against corrections officers, he may do so in a separately filed complaint.

## CONCLUSION

For the reasons stated herein, the Court finds that there is no genuine issue for trial and Defendants are entitled to judgment as a matter of law. Defendants' Motion for Summary Judgment will be granted by separate Order.

Date: July 29, 2011                    /s/
                                       ROGER W. TITUS
                                       UNITED STATES DISTRICT JUDGE